UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DONNA ST. JOHN,
PLAINTIFF

VS.

COMMISSIONER OF
SOCIAL SECURITY,
DEFENDANT

CASE NO. 1:08-cv-606-SJD-TSH
(DLOTT, C. J.)
(HOGAN, M. J.)


## REPORT AND RECOMMENDATION

Plaintiff filed her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) in January, 2005. Her applications were denied both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) in October, 2007 at Cincinnati, Ohio. Plaintiff, who was represented by counsel at the hearing, testified, as did Micha Daoug, a Vocational Expert (VE). The ALJ rendered an unfavorable decision in January, 2008 and Plaintiff then requested review by the Appeals Council, which denied review in July, 2008. Plaintiff then sought judicial review by filing her Complaint with this Court in September, 2008.


## STATEMENTS OF ERROR

Plaintiff asserts that the ALJ erred to her prejudice by determining her residual functional capacity to be less restrictive than it should have been. Underlying this single Statement of Error was the ALJ's decision to accept the opinion of a non-treating paper reviewer, rather than the opinion of Plaintiff's treating physician.


## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified that she lived with her daughter, Tracy, and 18-year-old granddaughter and relied on her daughter for monetary support. She has a 9th grade education and never

received a GED. Plaintiff testified that she is right-handed and was 5'5" tall and weighed 182. Her last job was as a janitorial helper, a part-time job. Prior employment was as a bartender in a bowling alley, a job from which she was fired for a "discrepancy in my money" in April, 2001. She then went to work as a bartender at Patty's Place, a job she held for approximately 1 year.

When asked why she cannot work, Plaintiff complained of pain, numbness and swelling of her hands and particularly her left hand. The hand pain is constant. She drops things. These symptoms appeared during the 2000-2001 period when she was still working at Western Bowl. She also experienced pain in her low back and left knee. The back pain is experienced daily, but it is not constant and is made worse by activities. Carpel Tunnel Syndrome was ruled out as the cause of her hand problems.

She was diagnosed with Hepatitis C in 2005 as a result of a liver biopsy and after a CT scan and ultrasound showed an irregularity. The discovery was made by Carrie Jennings, a nurse practitioner with the Liver Clinic at University Hospital. She is in the course of a year long Interferon therapy, which consists of a shot once a week and 6 pills per day. Interferon shots cause muscle aches and nausea. She is depressed and takes Prozac, prescribed by Dr. Alexander Brown at University Hospital Liver Clinic. The depression was not caused by, but is made worse by the Interferon therapy.

She is currently treating at Core Behavioral Center and sees Mr. Wylie every two weeks. She also takes Elavil, Flexeril, Amiltripyline and Zocor. Hepatitis C has caused fatigue. She is able to drive, but does no cleaning, cooking or shopping. Plaintiff testified that she could lift 10 lbs., sit without a break for 1/2 hour and stand for 15-20 minutes.

Plaintiff admitted that she last used crack cocaine 3 years ago and that she had used crack for 17 years and sold it to maintain her addiction. She testified that she suddenly stopped using drugs and daily use of alcohol without detoxification or medical assistance. She was never hospitalized or treated or treated by a mental health professional with the exception of Core Behavioral Health Center. She has never seen an orthopaedist or neurologist for her back problems. She uses no ambulatory aid. (Tr., Pgs. 299-343).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ asked the VE a total of three hypothetical questions. In the first, and the one actually accepted by the ALJ, the VE was asked to assume that Plaintiff could lift 50 lbs. occasionally and 25 lbs. frequently, and stand/walk for 6 hours and sit for 6 hours in a workday. The VE was then asked to assume certain mental restrictions: (1) an ability to perform multiple-step instructions, (2) an ability to relate to others, (3) should avoid a constantly rapid pace. The VE responded that Plaintiff could return to her previous work as a bartender, both as she performed the job and as the job is typically done.

The second hypothetical asked the VE to assume that Plaintiff could frequently lift 5 lbs., stand/walk 2 hours at a time, sit for 8 hours in a workday, and that she has moderate limitations of her ability to push, pull, bend and reach. She also should avoid working at a constantly rapid pace. The VE responded that Plaintiff would not be able to return to her previous relevant employment as a bartender, nor to any form of light work, but that she could perform a number of sedentary and clerical jobs, such as interviewer, charge account clerk and surveillance system monitor, all of which exist in representative numbers in the national economy.

The third hypothetical assumed the accuracy of Plaintiff's testimony. The VE responded that if that testimony were fully credible, Plaintiff would be unemployable.

Cross-examination of the VE demonstrated her opinion that if Plaintiff could only occasionally handle objects, she could still perform the job of surveillance monitor and one clerical job, that of call-out operator or credit checker, but the remainder would be precluded. The VE testified that the one job she could perform in this category existed in representative numbers in the national economy. The VE also opined that if Plaintiff's ability to tolerate stress were seriously limited, she could not perform the job of bartender. She also testified that there is inherent stress with any job, but that clerical jobs are not highly stressful. The obvious inference is that if a person cannot handle any stress, then no jobs are available.

## THE DECISION BY THE ADMINISTRATIVE LAW JUDGE

The ALJ found that Plaintiff had Hepatitis C, a degenerative disease causing lower back and neck pain and depression. The ALJ found all of these impairments to be severe, but none,

either alone or in combination, to equal any Listing. The ALJ found that Plaintiff has the residual functional capacity as formulated in his first hypothetical question to the VE. Finally, the ALJ determined that Plaintiff could return to her past relevant work as a bartender.

## THE MEDICAL RECORD

A needle core liver biopsy was done at University Hospital in Cincinnati in July, 2005 by Stephen Zucker, M.D. The Pathology Report showed that the sample taken was consistent with the Hepatitis C virus. (Tr., Pgs. 132-134). In April, 2005, Plaintiff was seen in the emergency room of University Hospital with low back pain precipitated by attempting to lift an object from a picnic table. The diagnosis was "acute exacerbation of chronic low back pain." She was treated with Toradol, Naproxen and Flexeril. (Tr., Pgs. 148-150). An abdominal ultrasound at University Hospital in January, 2005 showed "adenomyosis of the gallbladder." (Tr., Pgs. 153-154).

X-rays taken at University Hospital in September, 2004, showed no evidence of arthritis in the right wrist, but "mild medial compartment arthrosis bilaterally" and "degenerative disc disease at L1 through L3 with large end plate spurring" and "arthrosis of the lower lumbar apophyseal joints." There was "bilateral mild arthrosis of the S1 joints." The hip joints are "normal" and there is a "deformity of the right small finger, likely due to old mallet fracture which has healed" and "no evidence of arthritis" (Tr., Pgs. 155-157).

Alexander Brown, M.D. of the Hoxworth Treatment Center, saw Plaintiff from November, 2003 to January, 2005. Dr. Brown's diagnosis was degenerative disc disease of the low back and osteoarthritis of the knees. Dr. Brown indicated that Plaintiff had a full range of motion in the joints and/or spine, had a normal gait and no need for an ambulatory device. With reference to her liver, Dr. Brown said there was no enlargement, esophageal varices, history of bleeding or ascites. He stated she suffered from depression and had a poor toleration of stress. (Tr., Pgs. 159-162).

A Psychiatric Consultative Examination was conducted by Kevin Eggerman, M.D., in May, 2005. Dr. Eggerman found that Plaintiff suffered from alcohol and cocaine dependence in early remission and a depressive disorder. He assigned a GAF of 60-65. Plaintiff had never been

4

hospitalized for a mental disorder, nor had she been treated by a mental health professional. Her primary care physician prescribed Prozac. She has minimal limitation of her ability to understand and remember short and simple instructions and make judgments. She has a mild limitation of her ability to interact with the public, supervisors and co-workers, respond to changes and understand and carry out detailed instructions. She has a moderate limitation of her ability to respond to work pressures. (Tr., Pgs. 167-169).

A second psychological evaluation was done by Catherine Flynn, Psy.D., in June, 2005. Dr. Flynn diagnosed Plaintiff with a depressive disorder and alcohol and cocaine dependence in early remission, as did Dr. Eggerman. Dr. Flynn rated as mild, Plaintiff's limitation regarding her ability to perform the activities of daily living and maintaining social function. Dr. Flynn rated as moderate, Plaintiff's limitation regarding her ability to maintain attention, concentration or pace. Dr. Flynn found that Plaintiff had a moderate limitation of her ability to understand, remember and carry out detailed instructions and a moderate limitation of her ability to complete a normal workweek without interruptions from psychologically-based symptoms. (Tr., Pgs. 170-187).

A Physical Residual Functional Capacity Assessment was done by Walter Holbrook, M.D. in September, 2005. Dr. Holbrook's conclusions were that Plaintiff could occasionally lift 50 lbs. and frequently lift 25 lbs. She could stand/walk for 6 hours in a workday and sit for 6 hours. There is no sign of active liver disease. Lumbar x-rays showed "degenerative disc disease from L1-L3 with large end plate spurring, arthrosis of lower lumbar apophyseal joints." (Tr., Pgs. 188-195).

In May, 2007, John Wylie, a clinical social worker at Core Behavioral Center, reported that when Interferon therapy commences at the direction of Uri Avissar, M.D., and antidepressant medication is prescribed, he would see Plaintiff for therapy sessions in order to treat any mental health symptoms resulting from Interferon therapy. Mr. Wylie referred to Plaintiff's anxiety as "serious." (Tr., Pgs. 206 and 210). Records from Core Behavioral Center indicate that Plaintiff was being monitored for depression, anxiety and suicidal ideation. The initial assessment noted guarded behavior, an anxious mood, impaired memory, but no suicidal ideation. (Tr., Pgs. 230-239).

In February, 2005, Dr. Brown, completed a form called "Physician Certification of Medication Dependency for the Disability Assistance Program." Dr. Brown indicated that Plaintiff has Hepatitis C, osteoarthritis and depression. She is taking prescribed medication, Elavil, Prozac, Meridia and Ibuprophine and is to be considered a "medication dependent person." Dr. Brown indicated that standing/walking are affected, but sitting is not. He indicated that Plaintiff could stand/walk for 2 hours without interruption and could occasionally lift 5 lbs. Her ability to push/pull. bend, reach and handle were moderately limited. Dr. Brown's opinion was that Plaintiff was employable. He indicated that Plaintiff had no mental functional capacity deficits. (Tr., Pgs. 259-262).

Carrie Jennings, a nurse practitioner assigned to the Liver Clinic at University Hospital, reported in October, 2007 that Plaintiff had been on Interferon treatment for 8 weeks of a 48-week therapy plan. Ms. Jennings also reported that Plaintiff had developed anemia and was being monitored for depression. Gallbladder surgery was possible. A CT scan in October, 2007, showed "tiny nonspecific low intensity lesions in the liver, but no abnormalities of the kidneys, pancreas, spleen or adrenal glands (Tr., Pgs.264-269).

An EMG of Plaintiff's left arm in September, 2003 was "minimally abnormal" and "consistent with old left C-6 or C-7 radiculopathy." Nerve conduction studies of the left arm were normal. (Tr., Pg. 276).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden

7

of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth in his decision. *Walter v. Commissioner*, 127 F.3d 525, 529 (6th Cir. 1997); *Shelman*, 821 F.2d at 321.

## OPINION

If limited to sedentary work, Plaintiff would be disabled under the Grid Rules, so the argument is that the ALJ, accountable to the Social Security Administration for maintaining a fund with limited resources, found her able to do light work in order to protect the fund. This

8

argument in not specifically stated, but certainly implied. This, however, is not an appropriate case to make that argument.

The Plaintiff asserts that the residual functional capacity assessment, formulated by the ALJ, is too liberal and does not present a fair picture of the functional deficits resulting from her impairments. Let us begin by stating the obvious. Plaintiff has Hepatitis C, osteoarthritis in the lower extremities and depression. All the experts agree and there is objective medical evidence to support the two physical impairments in the form of x-rays, blood tests, physical examinations and a liver biopsy. In addition, Plaintiff was examined and tested by Dr. Eggerman and evaluated by Dr. Flynn. Both mental health professionals, one a psychiatrist and the other a clinical psychologist, agree that Plaintiff suffers from depression. Dr. Brown, a treating physician and we suspect a hematologist or nephrologist, but not a psychiatrist, not only agreed with the diagnosis of depression, but prescribed Prozac to alleviate its symptoms.

The strength of Plaintiff's case is in the diagnosis of her impairments, certainly not in the resulting functional deficits. Neither Dr. Eggerman, who examined and tested Plaintiff, nor Dr. Flynn, who evaluated the written psychiatric or psychological record, found any marked, serious or extreme limitations of Plaintiff's ability to perform work-related activities, such as understand directions, relate to others in the workplace, pay attention and concentrate, work at a steady pace and tolerate stress. Even Dr. Brown, Plaintiff's treating physician, found no mental residual functional capacity deficits and opined that Plaintiff was employable. While depression is real and exacerbated by Interferon therapy, it is being treated with both medication and counseling, and is not at the level precluding competitive work.

Plaintiff has physical evidence to demonstrate the source of her low back, knee and neck pain, but lacks the convincing proof that as a result of such degenerative disc disease and osteoarthritis, she has an inability to function. There is no treatment by an orthopaedist or neurosurgeon. There has been no surgery or significant physical therapy. There is no decreased range of motion, nerve root impingement, neurological deficits, use of an ambulatory aid or abnormal gait. Plaintiff's liver function tests were normal.

Although we are willing to concede that Dr. Brown is a treating physician, the times he has seen Plaintiff over the two-year period that he had contact with Plaintiff are few and far

9

between. There is, as the ALJ observed, no substantial evidence to justify the rather extreme functional limitations placed by Dr. Brown. Foe instance, Dr. Brown said that Plaintiff could lift only 5 lbs. occasionally, while Plaintiff testified that she could lift 10 lbs. and Dr. Holbrook opined that she had the capacity to lift 25 lbs. frequently and 50 lbs. occasionally. There is no treating physician with any real treatment relationship over time who contradicts Dr. Holbrook and Plaintiff, who has an unimpressive work history and has a lengthy history of illegal cocaine use and distribution, does not have the credibility to overcome the rather scant medical evidence in this record.

Once having concluded that neither Dr. Brown, nor the Plaintiff herself, was providing reliable information, a conclusion fully supported by the record, the ALJ really had nobody else to rely upon, save Dr. Holbrook, who admittedly never saw nor examined Plaintiff, but did review all the medical evidence which existed in September, 2005 and had no reason to slant the truth. We find that the ALJ's residual functional capacity assessment was neither too liberal nor too restrictive, but just right.

## CONCLUSION

Since substantial evidence supports the decision made by the Administrative Law Judge, we recommend that it be affirmed and that this case be dismissed from the docket of the Court.

July 21, 2009

Timothy S. Hogan
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONNA ST. JOHN,
    PLAINTIFF

VS.

COMMISSIONER OF
SOCIAL SECURITY,
    DEFENDANT

CASE NO. 1:08-cv-606-SJD-TSH
(DLOTT, C. J.)
(HOGAN, M. J.)

## NOTICE

Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 7/22/09. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).